Good morning, Your Honors. John Carpenter on behalf of the appellants. Going through the paperwork, I wanted to emphasize to the Court some of the timeline that I think was not adequately addressed in the paperwork. Mr. Costa was shot by Deputy Delpit on September 7, 2013. And Your Honors probably are aware that the family doesn't receive any evidence about what happens. They don't receive anything except for the body of their son. The complaint is filed. We have no evidence. Discovery is barred until after the initial exchange, after the filing of the complaint. And the early meeting of counsel was on December 18, 2014, more than a year later. Again, the appellants had no evidence at all. In 2015, January 13, 2015, appellants advised the Court in the supplemental excerpt of the record, 7, that there's still no production of evidence from the county. So what was the discovery deadline in this case? Well, this is when we were set. In December 2014, it was agreed that the discovery deadline would be in October of 2015. That's the schedule set by the district court? No, what happened at the early meeting of counsel, there was a discussion. And then in January 2015, we proposed a schedule, a discovery schedule, a trial schedule. And the Court was advised of some things. It was advised that, one, plaintiff had no evidence yet. And, two, that because plaintiff had no evidence, we could not agree to the defense proposed schedule. That is the supplemental 9. But notwithstanding that, we had no evidence. I'm asking a slightly different question. Oh, sure. So counsel agreed initially in the case that it tentatively agreed on a discovery deadline of October 15, right? Yes. Okay. And that was never adopted by the Court. The Court cut off discovery, right? And the Court, did the Court ever set a discovery deadline? The Court set the trial for November 17, 2015. Right. I don't recall exactly what the discovery cutoff was. Can I ask a question? Because you talk about their evidence, that you're not having any evidence. The complaint alleges that the dog had held down the decedent and the officer then shot the decedent. What's the basis for that? Well, because we had the body. We could see the dog bites on their son's leg. But what supports that theory, that that's the way it happened? There's no evidence in the record. I mean, there was some period here. This wasn't a motion to dismiss. It was a motion for summary judgment. Right. But there is no evidence in the record that supports that account. Am I correct? Well, we were prohibited from doing any discovery on that. But you brought a complaint in which that allegation was made. So what was the basis for that allegation? The basis of the allegations, Your Honor, were that the decedent was unarmed and that there was a ---- No, but for the scenario that the dog was holding him down. I mean, because that would be an excessive force claim, a viable excessive force claim. Somebody's held down by a dog and then someone shoots them anyway. But I don't know what supports the fact that that's what happened. You have statements by the officers. You have an independent witness. And none of those individuals support that scenario. So my question is, what does support that scenario? Of course, at the time of the filing of the complaint, Your Honor, we had no evidence. We didn't even have those statements of the officer or the witness. We had none of that. But what we did have is the knowledge that these dogs are trained to latch on and stay on. And so we believe that the dog continued to do what he's trained to do. And the body that we had had wounds from dog and also a bullet wound. And we had no reason to believe, even now, really, until we have discovery, that the dog didn't do what he was trained to do and stay on the client while he was shot by Officer Delpit. Can I have you go back to the discovery issue again? I'm looking at the district court's ruling in the court in addressing the discoveries that irrespective of the defense argument in reliance on that Supreme Court case of Siegert that prohibits discovery, the plaintiffs have three and a half months to have conducted discovery before summary judgment motions were filed. And the crucially indispensable item of evidence is really the independent witness, Mr. Morales, who witnessed the event. And defendants could not have unilaterally precluded Mr. Morales' deposition, made no effort to obstruct the plaintiffs, any attempt by a plaintiff to depose Mr. Morales. How do you respond to that? In terms of timing, I'm still confused. There was three months before summary judgment motion was filed? No, Your Honor. That's the point of the timeline that I was setting forth. Well, continue then. There was no evidence was submitted until after, when the court, the plaintiffs advised. When you say no evidence was submitted, I think you need to be more specific. Are you talking about no discovery produced by the defendants? Are you talking about no evidence submitted to the court? I'm sorry. I apologize. No evidence was exchanged. In the early exchange, what happens is, typically what happens is you do a voluntary exchange. Right. And we advised the court on January the 13th, 2015, that we still did not have anything, that voluntary exchange still had not happened. Now, that's a dispute. They say they gave it to us. But the fact of the matter is we did not have it, and we were advising the court on January 13th that we still didn't have it. We also advised the court that the county was requiring protective orders to be signed before additional evidence was produced. So you weren't ready to start conducting discovery? Correct. We didn't have anything, we didn't even have names. We didn't have anything until after that initial production was given. And so it's not until late January where we even got any evidence at all so we could start commencing discovery. And then in January 13th, the county advised us that we were going to have at least 15 depositions on each side. We agreed to that. We also agreed the discovery cutoff, because it was so much stuff, was going to be in October. But in fact, what they were doing is they were preparing their motion, which effectively cut off our discovery on April 1st. And then when we tried to start discovery, they were, nope, can't do anything. The supplemental record 339, paragraph 6, they objected to all discovery, everything. We were not allowed to do anything. So instead of having until October to do discovery, we had about 60 days to evaluate everything for the first time and do all of our discovery. It's not possible, it's not fair. They had all the discovery, they had all the evidence for over a year and a quarter. So you have to show prejudice from the denial of discovery. What do you hope, if you were to strive for us today, what you expect discovery to show, what would you say? Well, Your Honor, I think that the discovery will show, even with what we have, we show Officer Delpit saying alternatively different things. She says in the officer-involved shooting statement that she would not have told this person to stop. Because if you tell him to stop, he'll attack. But in the declaration, she said, I told him to stop. So why is that material? Because when you have a mentally ill person, he was mentally ill, when you have a mentally ill person, it's known, and police officers are trained, that when you compress time and you tell people to stop and you get close to them, they are prone to attack. Because what she said is true, that's what happens. So why is that relevant to a Fourth Amendment violation? Because she's, instead of accommodating the... So this isn't part of your ADA claim? There's a mixture of it, yes. But how is it relevant to your Fourth Amendment claim? It's a provocation. But before you get to provocation, when you talk about provocation, are you suggesting that she created the situation that led to the ultimate excessive force? Yes. But what creates that situation or starts the chain going has to itself be a Fourth Amendment violation. It's not negligence, it has to be a Fourth Amendment violation. So where is that precipient Fourth Amendment violation that then led to the use of excessive force? There's no evidence that the decedent was doing anything illegal. There's no evidence that there was any reasonable suspicion, but the standard here is probable cause. Well, just to stop him, to say the word stop, you need probable cause? Why is it more like an investigated detention? Because the stated reason was 5150, and 5150 is... Well, that's to actually take someone in custody, though. We're talking about just stopping to ask someone a question. It's sort of equivalent to a Terry stop, correct? There's no activity afoot. There's no criminal activity. But she says that he's acting irrational, that he's acting aggressive. There's an earlier 911 call that he's standing out in the middle of the street creating harm to himself. I know at this point in time he's walking along the road, but she's had someone who's previously been walking in the middle of the street acting aggressively. Why isn't that a basis to go up and say, stop, let me talk to you? Because the acting aggressively was not reported, and the acting... Was not what? Was not reported. There was no report of... No, but she saw him acting in an aggressive way. Well, that's what she says, but that's... Well, is it your position that you're entitled to test the credibility of the assertions, that you're entitled to discovery to test the credibility of what the officers are saying, even if you don't yourself have evidence that contradicts it? Well, I think we certainly are entitled to cross-examination of witnesses. I think that's absolutely yes. I also believe that there is a good possibility that this officer was confusing the symptoms of his disability, mental illness, with aggression. But leaving that aside, you've got to get to the excessive force. So what's your excessive force theory that you think you can prove through discovery? Because, you know, as you get into the judgment calls of officers, you get into the area of qualified immunity, no question about that. I mean, it's not that she got up that morning and said, I'm going to go kill this guy. She was responding to a situation that developed, and you can take issue with what she did. But the more we get into the discretionary area, the more we get into qualified immunity. Now, so tell me how you expect to affirmatively prove excessive force if you're allowed to continue with discovery. Well, I think once we are allowed to depose the witness and the officer, we will be able to show that, in fact, this dog did do its job. These dogs are really strong. And the dog did not. He didn't throw the dog around like this. He was not... So you're hoping that through cross-examination the witness will admit that she lied about what happened and that all of her prior statements are incorrect? Is that... Yes. Your Honor, we are entitled to discovery. You think you'll have the Perry Mason moment then? I mean, is that essentially... I've had a few of them. It seems to me your theory has to be that the decedent was subdued and then shot while subdued. I mean, that's it. The rest of it, I'm not sure, may serve to amplify that point, but that's it, isn't it? Well, also the stop itself, and I think also if the initial stop is illegal and then the officer provokes, then that's also a viable theory. But to show excessive force, you actually have to prove that the dog had subdued the decedent. And how are you going to do that? Well, with the witnesses, through the deposition of the witnesses and the... And we all... So you hope to show that the tow truck driver also was not being accurate about his earlier statements? Yes. Yes. In every case, we're allowed to depose witnesses and cross-examine witnesses. The right of cross-examination is the foundation of truth. And statements are incorrect in police reports all the time. And that's the purpose of cross-examination. It's why plaintiffs are entitled to cross-examination. And what happened below deprived plaintiffs with any cross-examination or any discovery at all. We're just being told that we have to accept their version of the facts, and that's not justice. Do you want to reserve? Yeah, I'll reserve the last. How much time do I have? Well, you had 30 seconds left. We'll give you a little bit of time, but not much. May I please report? Jonathan Magno on behalf of the appellees, County of Ventura et al. Just to start off, I want to quickly identify the timeline of the events. You asked what day was the discovery cutoff. I have September 28, 2015 with November 17, 2015 being the trial date. As discussed early in the briefs and oral argument with appellants, the main complaint regarding this case is that they felt they did not have adequate time to conduct discovery. And in all honesty, that is incorrect. On December 18, 2014, as seen in Excerpts of Record 8, the county defendants in that case, they provided all the discovery. They informed plaintiffs' counsel, appellants now, that they were going to be filing a motion for summary judgment, and they outlined the areas that they intended to file that motion for summary judgment. So is your position that the plaintiff doesn't even get to take a deposition before summary judgment is issued? I understand the qualified immunity theory of this case, but it's hard for me to understand why the district court would say, no, you're not entitled to take any discovery. Well, it's not necessarily that they aren't entitled to take a deposition. It's that the county defendants decided to move on their motion because they felt, based upon the interviewed statements by the witness, the tow truck driver, that they had enough evidence to move forward on a qualified immunity argument in which the court ultimately agreed. Well, you may have had enough in your files, but the question, even on qualified immunity, is whether genuine issue is a material fact, and if you don't let the plaintiffs even try to develop an issue of material fact, it's a bit unusual. Right, but under qualified immunity, the Supreme Court, and even the Ninth Circuit has adopted the language, has stated that it's important to get these qualified immunity arguments decided as soon as possible. Well, no question about that, but, I mean, usually they're decided on at least a fully developed record on the issues of qualified immunity. Typically that is the case, but... Does Ventura County have a bite and hold training policy with its dogs, do you know? That I do not. I mean, they have the bite and bark in some counties and the bite and hold training in other counties. I'm assuming Ventura County has a bite and hold policy. And anything else was excessive force, that's their theory, apparently. Correct. Why couldn't they take a deposition to test that theory before the judge ruled on qualified immunity? Well, Your Honor, they had every opportunity to do so. After the scheduling conference, there was three months that went by until the motions were filed. At that point, on April 1st, the county filed their motions for summary judgment, and they set it out two months in advance. So the hearing date was originally June 1st, 2015. At that point, six days later, or I believe on August 6th or 8th, or, sorry, April 6th or 8th, the plaintiffs in that case, sent their first deposition notices for Deputy Delpit and two other deputies. They did not and never did notice the deposition of the third-party witness, Robert Morel. But is it fair to say that Plaintiffs' Counsel thought he had more time, given that the discovery cutoff was three months away? Was that the reason for the stipulation to continue? Right. The stipulation to continue was to allow for this discovery dispute to be heard. It wasn't necessarily to move the hearing date so that the depositions could take place. The county was still going to argue in front of the magistrate assigned that the depositions were unnecessary. The only deposition that really mattered was that of the independent third party, who witnessed the entire event. He was able to see the use of force. Didn't you object to that deposition as well, though? There's no basis to object to that deposition. But didn't you object to it? We objected to the depositions of the deputies, the three that were noticed. While we said that we object to all future... Didn't you orally object at least to all of the discovery going forward or the depositions? We did say that we object to the depositions that were noticed and that all future discovery. However, even the district court judge correctly pointed out that there is no authority for us, while claiming qualified immunity, to in fact prevent the deposition of a third party independent witness who's not a member of the county of Ventura or the Ventura County Sheriff's Office. So that deposition would have been able to go forward. But in answer to the question, you did object. Correct. We stated that we weren't going to allow any discovery to move forward. However, it didn't prevent, just because of the misunderstanding of law by appellant's counsel for deciding that, okay, I'm not even going to attempt to notice a deposition. It shouldn't be a penalty to the county of Ventura or even be considered in the abuse of discretion standard for the district court. But in a nutshell, while the parties were trying to hash out the discovery issues and disputes, well before the discovery cutoff date, the district court ruled on the summary judgment motion. Is that a fair statement of what happened here? Yes, Your Honor. But the main point is that for the three months before, they knew that this motion was going to be coming. When the motion was filed, the county objected to any discovery at that point. And then from then on, they tried to do this stipulation. The parties signed the stipulation. But the stipulation wasn't only limited to moving the hearing date of the motions. It was also an attempt to move back the entire trial date to two or three months, including the discovery cutoff. And so the court, the district court, in receiving this stipulation, found that there was no good cause to even allow the hearing date to be moved because they were, in fact, asking for all dates, including that which had been agreed upon at the scheduling conference, to be moved back. And so, therefore, the district court felt that there was no good cause there and, therefore, there was no basis to even move the hearing date in that regard. Is it really your theory that in a case alleging excessive force under 1983, that the county is entitled to prevent discovery and rely on its own affidavits alone? Well, first, Your Honor, we aren't relying on... Well, no, I'm just saying, I mean, or your own production? Well, the basis of our argument is that the county provided all the materials to plaintiffs in this case, and they had ample opportunity. There were over 700 pages of reports, policies, recorded interviews, and statements that they were able to review. At that point, they made no efforts to even request further production, and even if they... I'm not asking about what they did or didn't do, but it seems like the county's position in this instance is that in a qualified immunity case, all you have to do is produce your documents and then go directly to the judge without allowing them to take any depositions. That's not the position of... So why did you object to the depositions of the officers, then? Because while we raised the qualified immunity, in this instance, we felt that the court had enough evidence and supporting documents that it was unnecessary. Well, why do you say that? I mean, basically you're saying you get to hear our case, but the plaintiff doesn't get to tender any evidence to establish a genuine issue of material fact. We win, even though at summary judgment, even on qualified immunity, you must construe the facts in a light most favorable to the plaintiff. That is correct. I mean, two days of depositions would have solved this problem. Yes, but at this point, we have to look and determine whether there was an abuse of discretion in preventing the additional discovery. The county's position here is that the court received enough to make its determination... But it's all one-sided. It's one-sided in the sense that it all aligns with the county's theories. The only evidence in this case is not the statements of Deputy Delpit. It's the recorded interview of the third party who observed the entire incident. He was able to see the dog latch on to the decedent's arm. And even though that the dogs are very strong and very heavy, he was still able to swing the dog around. He was able to punch at it. He eventually reached Deputy Delpit and punched her in the face, which caused her to draw blood from her nose. There's no doubt through the third party testimony that the use of force was not only reasonable, but... Well, third party interview. Right. Correct. There wasn't testimony under oath, right? Correct. So what was the admissible evidence? Well, the court found that the interview of the tow truck driver was admissible. The court found that the declaration, which is signed under the same penalty of perjury as if Deputy Delpit testified in court, was admissible. As long as... As well as all the additional documents, the reports generated, the 911 call, which corroborated what Deputy Delpit observed. As well as there were other passerbyers who drove past the scene who gave written reports as well. The court decided that the plaintiff's decedent's parents, their testimony as to his mental health and his prior interactions with law enforcement, that's irrelevant. Because, in fact, it is irrelevant because when Deputy Delpit arrived, she had never known Deputy Delpit. Or have met the decedent before, and her entire knowledge of the decedent was what she observed on that day. And it's the county's position now that the district court properly held that Deputy Delpit was entitled to qualified immunity. The initial encounter with Deputy Delpit, she arrived on the scene and she observed the decedent, you know, acting aggressively, walking back and forth, talking to himself, waving his arms in the air. This statement is corroborated by the tow truck driver. He saw very similar things, and he even gestured to Deputy Delpit as she passed by him. The tow truck driver made an indication that he thought that the decedent was acting kind of funny, and she agreed. And at that point, there was no detention until the dog actually came out of the car. And she grabbed a decedent's arm, because all the other attempts to communicate with the decedent, they were not complied. She several times got out of her vehicle, tried to make conversation with him. He didn't agree with, he didn't comply. He kind of turned around and kept walking. She tried this two or three times. Eventually, he decided to charge at her, and at that point, she told him to stop or she'll release the dog. Once he continued to get close to her, she released the canine partner and it latched onto his arm. But as seen by the testimony or the interview of the tow truck driver, that didn't stop him, and he was ultimately able to reach Deputy Delpit and punch her in the face. And then the tow truck driver was also able to say that he was easily able to see the decedent try and reach for Deputy Delpit's firearm, which ultimately resulted in her wrestling him for the gun and shooting him one time in the chest. I'd also like to address the ADA claims by appellants and how that under the ruling in Sheehan, the facts are clearly different in the sense that Deputy Delpit, she had no knowledge that the decedent was mentally ill. In the Sheehan case and the cases cited by Sheehan. By the time of her repeated encounters, she must have had some idea that he was mentally ill. I mean, that was the basis on which you claim at one point that she was permitted to tell him to stop. So at that point, she had some idea he was mentally ill. And she called for backup, correct? He did call for backup, and backup was initially dispatched as well. They just hadn't arrived yet. But in this instance, there's no indication why he was acting the way he was. It could have been drugs. It could have been mental illness. She wanted to make that determination through a 5150 stop and be able to properly identify what is going on with this individual. And so she had no knowledge necessarily that he was mentally ill. Therefore, any claim that she was prejudiced or failed to accommodate him wouldn't apply in this case. Additionally, there's also the Ninth Circuit agreed in Sheehan that exigent circumstances can be weighed in the reasonable analysis. What were the exigent circumstances? The exigent circumstances was that she had been told before that he was behaving irrationally. He was walking in the middle of traffic. This is a populated area. There are cars going by. Well, at this point, he's walking on the side of the road, though, right? Correct. But she did have knowledge that he was walking in traffic. Clearly, what she's seen is he's acting erratic, aggressively. If a car happened to pass by, he could have jumped out. He could have been injured himself, or he could have injured those in the vehicles. This was a populated area in which she needed to make sure that the situation was controlled. Additionally, unlike in Sheehan, this is an open area. In Sheehan, the plaintiff in that case was in her room, in a confined space. There were no other individuals that could have been harmed by the mentally ill individual. Any further questions? No. Thank you, counsel. We'll give you two minutes. I'd like to address, Your Honor, with respect to, I think, which is the most important aspect, and that's the reassignment. The appearance of justice is really important, and here in this case, even the defense counsel for the county saw the inequities of what they were doing. That's why they re-stipulated to have the court decide the issue of whether or not these objections were good or not, and then do the oppositions. So we got together, and we agreed amongst ourselves that let's have the courts decide whether or not this discovery objection is valid. So we were drafting the discovery. We asked the court to continue the motion for a summary judgment and make a determination of the objection, and the court decides, says no, and then says, based upon the allegations of the complaint, which allege pinning down of a dog and shooting, that that's okay. You are addressing an issue on rebuttal that you didn't raise. Oh, I apologize. I understand it's presented, but it's a new issue, so it's a little unfair to bring it up. I apologize. We have your brief on that issue. Anything else you want to discuss with us? I think that just the record is that they object to all discovery as he eventually conceded, and I think it's very clear that we're entitled to evidence cross-examination to submit in oppositions. And so with that, I submit, unless there's any questions. Thank you, counsel. Thank you both for your arguments this morning, and the case will be submitted for decision. We will be in recess.
judges: Thomas, Nguyen, Amon